## THOMSON–HOUSTON ELECTRIC CO. v. CENTRAL ELECTRIC RY. CO.

### Sac. No. 389; December 20, 1898.

#### 55 Pac. 777.

**Agency.**—Plaintiff was to Act as Purchasing Agent for defendant, but was to assume no responsibility for the satisfactory working of the apparatus purchased. The contract contemplated that plaintiff should pay for the apparatus, and be repaid by defendant in a lump sum, which was to include all supplies. The apparatus proved defective, and defendant notified plaintiff not to pay therefor until an adjustment was reached, stating that it had claims on other purchases against the seller almost equalling the entire cost, to which plaintiff's agent agreed, and unsuccessful attempts were made to adjust defendant's claims extending over several months, and until after the insolvency of the seller. In an action for the price, plaintiff's treasurer and the seller testified that plaintiff paid for the apparatus soon after delivery, and before the notice of defect. Held, that the agreement to withhold payment by plaintiff's agent, who did not know payment had already been made, did not prevent recovery, since it was without consideration.

APPEAL from Superior Court, Sacramento County.

Action by the Thomson-Houston Electric Company against the Central Electric Railway Company. From a judgment for defendant and from an order denying a new trial plaintiff appeals. Reversed.

Page & Eells for appellant; Johnson & Johnson for respondent.

CHIPMAN, C.—Action to recover the sum of $1,100, the contract price of four so-called Tripp trucks, furnished by plaintiff to defendant under written contract executed March 19, 1892. The cause was tried by a jury, and defendant had the verdict and judgment thereon. The appeal is from the judgment and from the order denying motion for new trial. The pleadings are verified.

Plaintiff is a Connecticut corporation, transacting business in San Francisco and other places through branch agencies. The manager of the San Francisco branch was Thomas Ad-

dison, with authority to make the contract. Plaintiff proposed that defendant purchase quite a large lot of electrical and other supplies suitable for defendant's use, and the proposal was accepted. The part of the contract now in question was as follows: ''We propose to furnish four (4) latest improved roller-bearing Tripp trucks, you to guaranty that the above trucks shall not cost us to exceed two hundred and seventy-five dollars each f. o. b. cars Boston, Mass. In furnishing said trucks, however, it is agreed and understood that we act only as your agent in the matter, assuming no responsibility for their proper or satisfactory working, or for any delays in delivery of same, nor for any costs or expenses growing out of suits for alleged infringements of patents.'' The clause as to payment was for a gross sum ($10,000) for all the supplies ''thirty days after the same has been delivered to you as above agreed upon, ready for successful operation.'' The complaint alleges that plaintiff fully performed all the conditions of the contract, including the purchase from the Tripp Manufacturing Company of, and payment to it for, the trucks in question. Defendant denies the purchase by plaintiff as alleged, and the payment by it to Tripp company; avers as a separate defense that plaintiff, as special agent of defendant, received the trucks from the Tripp company, and that plaintiff was authorized to do nothing else in connection with said trucks; that upon receipt of the trucks by defendant it notified plaintiff of a claim defendant had against said Tripp company which defendant desired to offset against said Tripp company for the purchase price of said trucks, all of which plaintiff knew before it paid said Tripp company as alleged in the complaint, and, if such payment was made by plaintiff, it was in violation of its authority; that said Tripp company at the time of said alleged payment was, and ever since has been, insolvent; and by reason of said payment, if made, defendant has been damaged $1,187. A second separate defense by way of counterclaim and offset is pleaded, alleging an indebtedness of Tripp company to defendant of $1,187 for money paid and expended by defendant in the repair and alteration of Tripp trucks purchased by defendant from said Tripp company within two years last past, of which claim plaintiff, at all times mentioned in the complaint, had knowledge; that plaintiff was acting only as special agent of defendant, and was

instructed by defendant not to pay $1,100, or any part of it, to the Tripp company, and that any payment made by it was without authority, and in violation of the agency and its instructions; avers that defendant has been prevented from collecting its said claim of $1,187, or offsetting the same by plaintiff's payment of said $1,100, and to defendant's damage.

1. Appellant contends that the evidence is insufficient to justify the verdict. By the terms of the contract, plaintiff became the agent of defendant to purchase the trucks, but no responsibility was to attach to the agent for the proper and satisfactory working of the trucks, nor for delays in the delivery. The cost was included in the gross sum to be paid for the entire equipment, which was $10,000; and defendant agreed to pay this sum "thirty days after the same has been delivered . . . . ready for successful operation." The words "successful operation" had reference to the other equipment, and not to the trucks, for it was especially agreed that plaintiff assumed no responsibility for their proper working. These trucks were to be purchased by plaintiff and paid for by plaintiff, for it agreed to furnish them; and defendant was to pay plaintiff, and not the Tripp company. The agency feature of this part of the contract was introduced to relieve plaintiff from liability as to the proper working of the trucks and as to delay in delivery, and properly so, because plaintiff had no interest or profit in these items. The evidence is uncontradicted that plaintiff gave the order to the Chicago branch, and the trucks were ordered by the Boston branch, and were delivered to that branch June 29, 1892. The bill reached plaintiff's Boston branch July 6th, and August 4th a statement of account of plaintiff was rendered by the Tripp company, and on August 5th the trucks were paid for by the Boston branch. Notice of this payment was not sent to the San Francisco branch. When the trucks were shipped to Sacramento does not appear, but it does appear that they were first used or examined about September 1st. Some repairs were found to be necessary upon them, and on September 7th defendant wrote the San Francisco branch not to pay the Tripp company in full until defendant made settlement with plaintiff. September 8th Dr. Addison wrote: "We cheerfully comply with your request, at the same time asking you to complete the repairs as promptly as possible, and

give us a full account of the same, together with costs." September 30th defendant sent account of charges "in perfection of trucks purchased from you for our use and account," charging plaintiff $134.34. On October 1st Dr. Addison replied, and, among other things, said: "While we should be glad to continue to act as your agent in this matter, if you so desire, and forward this [the account] to the Tripp people, yet we should prefer to have you take it up yourselves, and fight it out. You will note by our contract, dated March 19, 1892, that we simply act as your agent in this, and do not assume any responsibility whatever for these trucks. For this reason we return these bills to you, and ask you to take the matter up directly with the Tripp people." October 3d defendant replied: "We will do as requested; therefore do not pay the Tripp Manufacturing Company anything on these trucks until we can get this adjusted." On the same day (October 3d) Dr. Addison wrote to the Boston house, calling attention to the claim of defendant of $134.34 for repairs of these trucks, and, at the request of defendant, suggesting "that you defer settlement for these trucks until the same is adjusted with the Central Electric Railway Co.," and disclaiming responsibility for the trucks not working. October 11th the San Francisco house received a reply to its letter of October 3d, from the Boston branch, stating: "We will defer settling with the Tripp company until this matter is arranged. We suppose you will secure a claim from the railway people covering the expense incurred by them, which we will submit to the Tripp company before making settlement." The evidence of defendant was that there was no claim against the Tripp company on account of these four trucks except the $134.34. But it appears that defendant had purchased other trucks directly from the Tripp company, the satisfactory working of which that company had guaranteed. Defendant made certain necessary repairs on these latter trucks, and on October 10th defendant wrote the San Francisco branch, again asking that the Tripp company be not paid for the four trucks, as the Tripp company owed defendant "nearly enough to balance the account," but sending no items of account. Several other letters were exchanged between defendant and Dr. Addison on the subject, showing that defendant was endeavoring to effect a settle-

ment with the Tripp company without much success, and asking that plaintiff do not pay the Tripp company for the trucks; and on November 7th Dr. Addison wrote to defendant: "If you feel that you cannot settle it, send the account to me, and I will see what can be done, but of course cannot take any responsibility for such settlement." Defendant continued its efforts to settle with the Tripp company direct. February 17, 1893, Dr. Addison asked defendant if it could not, in making its settlement with the Tripp company, collect a claim of his company against the Tripp company for $228. It does not appear that defendant ever notified the plaintiff of its claims against the Tripp company other than those on the four trucks, except in the letter of October 10th, as already stated. Finally, February 20, 1893, Dr. Addison wrote the defendant that he was advised by the Boston office that the Tripp company had made an assignment for the benefit of its creditors, and that, unless a certain proposed compromise was accepted, his company would not get over ten or twenty per cent of its claim, and adds: "I give you this information in case you should desire to take advantage of the same." This brought the matter to a focus, and defendant wrote to plaintiff, March 4th, inclosing balance as settlement of account to February 1, 1893, and added: "The eleven hundred dollar item, as shown in your statement February 28th, is wholly incorrect, as the T. H. [Thomson-Houston] contract is settled so far as you are concerned, we having (by your own suggestion) taken up the matter of settlement with the Tripp Manufacturing Company for the trucks. We hope you will save us further correspondence over this matter," etc. March 6th, Dr. Addison replies, and for the first time informs defendant that plaintiff had already paid the Tripp company for the trucks, claiming that defendant owed plaintiff for them, and stating that, "if the Tripp company had not failed, this matter would be easier of adjustment than it is." The remaining correspondence consists of restatements of former letters, and the writers' construction of their meaning. It will be observed that all this correspondence occurred after the Tripp people had been paid. That they were paid by the Boston house on August 6, 1892, is undisputed, except as it may be otherwise inferred from this correspondence. We think the sworn testimony of the treasurer of the Boston

branch of plaintiff, and also that of the manager of the Tripp, company, may be consistently accepted as true, notwithstanding the ignorance of the fact of the San Francisco house and of the person in charge of the correspondence at Boston. We see no necessary conflict between the fact of payment sworn to and the subsequent correspondence.

The repairs upon trucks purchased directly by defendant from the Tripp company, or other items of charge of defendant against that company, with which plaintiff had nothing to do, and which items were never furnished plaintiff, had no connection with the defendant's contract with the plaintiff. When defendant asked plaintiff to withhold payment for the four trucks until defendant could adjust its differences with the Tripp company as to matters of no concern to plaintiff, it was asking something it had no right to ask under the contract. What plaintiff did in respect of those claims was voluntary, and without consideration. Even as to the four trucks, plaintiff, by the terms of the contract, was to assume ''no responsibility for their proper and satisfactory working, or for any delays in delivering the same.'' The contract required plaintiff to make the purchase of four trucks, and contemplated that plaintiff should, in the first instance, pay for them; and there was no restriction upon plaintiff as to when it should pay for them. The very matter as to which repairs became necessary was in terms taken out of plaintiff's responsibility. It was guaranteed by defendant that the trucks should not cost plaintiff ''to exceed two hundred and seventy-five dollars each, f. o. b. cars Boston, Mass.,'' which was the price paid by plaintiff; and this price was included in the gross sum of $10,000 to be paid for the entire equipment by defendant.

As to the knowledge of the insolvency of the Tripp company, there is no evidence that plaintiff knew it until after the assignment for the benefit of the creditors in February, 1893, which fact was promptly communicated to defendant; and there is no evidence that the Tripp company was insolvent at the times alleged in the answer.

2. We do not feel called upon to examine the alleged errors of law occurring at the trial in giving instructions and refusing or admitting evidence. Many, if not all these, are connected with the question of plaintiff's liability for

the claim of defendant for $1,187 arising out of repairs to trucks not purchased through plaintiff, as to which we have held that plaintiff incurred no liability. The judgment and order should be reversed and the cause remanded.

We concur: Haynes, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order are reversed and the cause remanded.