[Civ. No. 6840.   First Appellate District, Division Two.—November 5, 1930.]

DOLMAN COMPANY, INC., (a Corporation), Respondent, v. RUBBER CORPORATION OF AMERICA (a Corporation), Appellant.

354

Glensor, Clewe & Van Dine for Appellant.

Boyd Oliver for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendant to recover moneys alleged to be due under an oral contract. The defendant answered and the trial was had in the lower court before the court sitting

with a jury. The jury returned a verdict in favor of the plaintiff and from the judgment entered thereon the defendant has appealed and has brought up a typewritten record.

Mr. M. T. Dolman, president of the plaintiff corporation, met Mr. W. Flanders Setchel, the general manager of the defendant corporation, and a conversation was had regarding the employment of the plaintiff by the defendant as its advertising agent. Thereafter on August 10, 1927, the two met again and at that time Mr. Dolman delivered to Mr. Setchel a written plan which is set forth in the transcript. It included the use of advertisements in newspapers, window cards, window streamers and "throw away cards". Newspaper advertising was to be done in the metropolitan daily newspapers of San Francisco and Oakland. The advertisement in each newspaper was estimated as to size and the cost per week. Each other item of the plan was estimated as to quantity and the cost of each item. After that conversation, on August 12, 1927, the plaintiff wrote the defendant a letter confirming the conversation. Omitting irrelevant parts and for our convenience numbering the paragraphs the letter stated:

"1. We wish to thank you for placing your advertising account with this agency, and, to confirm our understanding of the basis upon which it is to be handled.

"For the present all that is required is for us to prepare a booklet, illustrating Keaton Tires and describing their various points of superiority.

"And to plan and prepare and place a campaign 'of advertising to appear in San Francisco and Oakland newspapers (to be selected later) featuring Keaton Week, August 21.

"To supervise the preparation of publicity matter under the direction of Mr. A. S. Peterson, to be furnished the newspapers.

"To plan and prepare such window streamers and window cards and display advertising material as may be deemed necessary and compatible with good judgment.

"2. It is understood further that these arrangements, tentatively entered into by Mr. Setchel and this agency are contingent also upon confirmation by your permanent board of directors.

"3. It is agreed further that the Dolman Company, Inc., is to be assured, during the life of any agreement of a mini-

mum remuneration of $50.00 per month, regular agency commissions to apply against this fee.

"4. It is agreed by you that the Dolman Company, Inc., is to retain any and all customary agency commissions from publications, etc., that you will remit to us for all monthly bills on or before the tenth of the month following date of invoice, and you will receive, for this, a 2% cash discount for such payments, but only when the monthly invoices have been paid in full."

The advertising was to take place during "Keaton Week", which was to commence on the twenty-first day of August, 1927. That letter was not answered by a letter written by the defendant. However, after the letter was written the plaintiff proceeded to prepare the advertising matter, including the wording, size, etc., of the newspaper advertisement. Having done so, it caused its secretary to take the proofs and submit them to the defendant. When she returned and made her report, on August 19, 1927, the plaintiff wrote the defendant a letter confirming the conversation between the plaintiff's secretary and the defendant and stating that the plaintiff would make certain corrections which had been suggested. In that letter the plaintiff stated the cost of each newspaper advertisement and also the total thereof. After that letter was sent the advertisements were inserted in the newspapers. No claim is made that said advertisements did not in form, in size and in all other respects conform with the terms of the oral agreements. During the oral negotiations the defendant discussed its desire to pay for some of the advertising in trade. Mr. M. T. Dolman testified that he stated to the defendant that agreements to pay in trade must be negotiated by the agents of the defendant and not by the agents of the plaintiff but that otherwise such arrangements would be satisfactory to the plaintiff. Mr. William A. Dolman testified that prior to the placing of the advertisements he had a conversation with Mr. Setchel in which he stated to Mr. Setchel the necessity of bills being paid to the plaintiff promptly to the end that the plaintiff in turn could make its payments promptly to the newspapers and thus obtain the benefit of certain liberal discounts which were made to the plaintiff by the newspapers and which enabled the plaintiff to give to its patrons more liberal terms. Before "Kea-

ton Week'' had ended no further communications; oral or written, were had between the witnesses above named.

The plaintiff pleaded its claim in five separate counts. The defendant denied many of the allegations, but as to the newspapers it admitted that it employed the plaintiff to place the advertising, but contended that the advertising was limited to $1200, and that it was to be paid for in trade and that each application for advertisements should have indorsed thereon a stipulation to that effect.

After the ''Keaton Week'' had taken place the plaintiff paid the bills which it had incurred and asked the defendant to pay it. The defendant did not do so and this action was commenced. The defendant does not claim that it did not authorize everything done which the plaintiff did nor does it claim any defect in the performance by the plaintiff except as we shall note.

Using the language of defendant: ''The issues were (1) whether the agency was authorized to place advertising to the extent of $1,200 and no more; (2) whether such advertising was to be placed only upon condition that the newspapers would take payment therefor in tires and (3) whether in any event the defendant's liability to pay therefor was to the newspapers or to the agency.'' The defendant does not follow this order in briefing, but the gravamen of its complaint is that the issues so enumerated were not properly presented by reason of certain errors committed at the trial. In assignments 1, 3, 4, 6 and 9 the defendant complains of the admission of evidence showing payments made by the plaintiff. ■ It asserts the plaintiff in making the payments acted as a volunteer. We think it did not do so. Paragraph four of the letter written August 12, 1927, shows that defendant was to pay the plaintiff and that the plaintiff was to pay the newspapers, receive the discount, and retain the discount to its own use. There was other evidence which clearly authorized, at least by implication, plaintiff to pay the other expenses which it was expressly authorized to incur. ■ The defendant complains because evidence of usage was introduced. It was in the nature of a description of the business in hand which is somewhat out of the ordinary. Among other things, it showed the following: As to a newspaper, an advertising agency undertakes to solicit and finally prepare for inser-

tion advertising matter and to collect therefor and then to pay the newspaper. In turn the newspaper gives to the agency liberal discounts on the payments which are made promptly. As to the advertiser the agency undertakes to inform itself of his wants and needs and express them in the most effective form for insertion in a newspaper, to select the place in the newspaper where the advertisement is to be inserted, to obtain the most efficient and economical space and make all arrangements therefor. On all of these matters it undertakes to be informed as fully as the proprietors of newspapers. Both as to the newspaper and as to the advertiser it undertakes to do perfect work. In the interest of the newspaper and also in the interest of the advertiser it undertakes to make payments promptly, obtain discounts for the prompt payments, and give the advertiser the benefit of the cheapest service possible. Mr. Dolman testified that he stated these matters to Mr. Setchel. Continuing, he testified that said facts were the general usage. ■ Evidence of the covenants of standard forms of contracts used by agencies and newspapers was admitted. We think the trial court did not err in admitting it. It was but a method of showing what the nature of one of these transactions is in the absence of express covenants to the contrary. As the contract, if any, between the plaintiff and defendant rested in parol the evidence just referred to was not improper. ■ Letters written by the parties after the end of "Keaton Week" were introduced. The defendant asserts that they were improperly received and were in the nature of self-serving declarations. The point is not sustained by the record. As recited in paragraph two of the letter dated August 12, 1927, Mr. Setchel endeavored to hold the contract open until it was confirmed by the defendant's "permanent board of directors". As neither a confirmation nor objection of defendant's "permanent board of directors" was sent forward before the plaintiff had fully performed everything by it to be done and performed, at least as to some parts of the agreement, the terms were not agreed to. Until all communications, written or oral, made before the trial were received and considered the jury under the circumstances was not in a position to ascertain exactly what had been agreed to and what had not been agreed to. From what has been said above it is

patent that defendant's motion to strike out the written estimate dated August 10, 1927, was properly denied and the same comment applies to the motion to strike the letter dated August 12, 1927.

■ The defendant makes several attacks on the giving or refusing to give instructions. We do not find any merit in any one of the attacks. It objects to instruction No. VI. It says that the instruction submitted to the jury whether the letters constituted a contract; that it is in conflict with instruction No. VII; and that it withdrew from the jury the question of authority. A bare reading of it shows that it did nothing of the kind. It was not addressed to authority. That subject was fully discussed in other instructions. It complains of instruction No. VII. That objection is hypercritical and rests on a typographical error. The letter dated August 12th contained statements regarding the times within which payment should be made. The letter dated August 19th contained a list of the amounts that would be due each paper. Instruction No. VII clearly refers to both letters, but inadvertently repeats 19th instead of using 12th when referring to the letter which specified the times of payments. The defendant further complains of instruction No. VII and asserts that it ignores conflicts in the evidence and assumes facts in so far as the last sentence stated the amount expended by the plaintiff and the commission thereon. We think it does not do so. That the plaintiff paid all bills incurred by it was not a disputed fact. That the total sum so paid was $2,075.79 was not a disputed fact. Under what circumstances the plaintiff was entitled to be repaid by the defendant was the subject matter of other instructions. The instruction under attack told the jury that if it found those circumstances in favor of the plaintiff then the jury could, under certain circumstances enumerating them, add to its verdict fifteen per cent as commission. It went no further. The trial court refused to give defendant's proposed instruction No. II. That instruction purported to state the law as to the authority of this plaintiff to pay the newspapers and thereafter collect from the defendant. It purports to follow Civil Code, section 2343. That section states the law as to an agent's obligation to a third person. In this case we are considering the rights and obligations between principal and agent.

In 2 C. J. 793 the rule is stated as follows: "Except where the contract of agency contains stipulations contrary to or inconsistent with any right of the agent to . . . reimbursement for liabilities or expenditures incurred in the furtherance of the agency, an agent ordinarily is entitled . . . to reimbursement from his principal for all advances and expenditures properly made in carrying into effect the purpose of the agency." The text cites, among other authorities, *Thompson-Houston Elec. Co.* v. *Central R. Co.*, 6 Cal. Unrep. 202 [55 Pac. 777]. ■ Applying that rule to the instant case, there was nothing precluding the plaintiff from making the payments. There was no covenant in the contract limiting its right so to do. Complaint is also made because the trial court refused to give defendant's requested instruction No. IV. The court did not err. The instruction was an improper statement of the law. Among other things it purported to withdraw the letter dated August 12, 1927, as being no part of the evidence of the contract between the parties. To have so held would have been to commit reversible error.

The defendant asserts that the judgment was excessive in the sum of $50. The plaintiff admits the fact and asks that the judgment be modified accordingly. Therefore, the words "the sum of two thousand three hundred and eighty-nine and two one hundredths ($2,389.02)" contained in the judgment are changed to read as follows: "the sum of two thousand three hundred and thirty-nine and two one hundredths ($2,339.02)".

As so modified the judgment is affirmed and the plaintiff will recover its costs on this appeal.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 5, 1930, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 29, 1930.