# Wallace, Appellant, *v.* Dorris.

*Lease—Coal lease—Extension of lease—Evidence—Question for jury.*

A coal lease provided that if the lease should not be renewed at the end of the term, the lessors should pay to the lessees a certain share of the cost of coke ovens erected on the premises by the lessees. At the end of the term the lessees continued mining coal, making coke and paying royalties. The lessors contended that the lease had been renewed, and that they were not liable years after the termination of the original term to pay any share of the cost of the coke ovens. The lessees contended that the lease had not been renewed. The evidence on the subject was conflicting. A letter was admitted in evidence written

by the lessees in reference to the renewal of the lease, just before the expiration of the term. *Held* (1) that the letter was properly admitted in evidence; (2) that the case was for the jury; (3) that a verdict and judgment for defendants, the lessors, should be sustained.

*Evidence—Writing—Offer of whole paper.*
Where a party offers a paper in evidence he must offer the whole of it.

Argued April 22, 1907. Appeal, No. 396, Jan. T., 1906, by plaintiffs, from judgment of C. P. Huntingdon Co., Sept. T., 1904, No. 22, on verdict for defendants in case of W. W. Wallace, Administrator of R. B. Wigton, deceased, W. H. Wigton and Frank H. Wigton, late trading as R. B. Wigton & Sons, to use of Frank H. Wigton, v. John D. Dorris et al., executors of William Dorris, deceased. Before FELL, BROWN, POTTER and ELKIN, JJ. Affirmed.

Assumpsit to recover a portion of the cost of a coke oven. Before WOODS, P. J.

The facts are stated in the opinion of the Supreme Court.

At the trial when A. M. Walker was on the stand, the witness was asked this question.

" Q. I ask you now to read the balance of the indorsement upon the original paper which was offered and admitted."

Mr. Waite: Plaintiffs' counsel object to reading the memorandum indorsed upon the lease in lead pencil, a large majority of which is effaced, so as to render it unintelligible, and for the following reasons:

1. From an inspection of the paper itself no date appears to the indorsement, and, therefore, no one can tell to which renewal it refers.

2. It is not signed by any person.

3. That part which is erased might explain that part which seems to be legible upon the back of the lease.

4. It is not signed by anybody or sealed, the plaintiffs' counsel, therefore, declines to read a part of this memorandum for the reason above given.

Lastly, it does not appear to be any part of the lease or a renewal thereof.

The Court: We will hold you to the rule of law and require you to read all the indorsements on the lease. Bill of exceptions sealed for plaintiffs. [1]

The court admitted under objection and exceptions the following letter: [3]

"December 5, 1891.

"Mr. WILLIAM DORRIS,

"Huntingdon, Pa.

"Dear Sir: We had expected before this to take up the matter of the Morrisdale lease, but on account of the absence of our Mr. F. H. W. the writer has been so closely confined to here and New York that it has been utterly impossible for him to get up the country in order for him to have necessary interviews with Mr. Duncan and Isett. As soon as we can get away, which we hope to be able to do next week, we will see both Moshannon and Mr. Isett and arrange the details and we will have the entire matter in shape to take up with you on the return of our Mr. F. H. W. about the 24th. In the meantime, however, we would suggest that our present arrangements with Morrisdale be carried over January 1st, as I think we can arrange the entire lease within a very short time after that date if not prior to it.

"Very truly yours,
          (Sgd.)    "R. B. WIGTON & SONS.

The court charged in part as follows:

[Now, gentlemen of the jury, it appears that there were coke ovens to be built by R. B. Wigton & Sons upon these terms and that they were ready and willing to build them and operate them, provided William Dorris would allow them to take the coal from this property, they to pay him a certain royalty. In the original agreement, gentlemen of the jury, there is a stipulation which reads as follows: "To be for the term of five years from the first day of January instant;" that is, the agreement was to begin on that January 1, "with the right, however, to the said Wigtons to terminate the lease at the end of any one year of the term, having given to the lessor three months' previous notice in writing of his intention to end the same."

Now, gentlemen of the jury, this whole contract was in force and that clause I have just read was in force in 1892. There does not appear to have been any notice served by R. B. Wigton or his successors in title to this lease, on William Dorris,

except as contained in this letter, dated December 5, 1891, in which it was said : " In the meantime, however, we would suggest that our present arrangement with Morrisdale be carried over January 1, as I think we can arrange the entire lease within a very short time after that date if not prior to it." In other words, there was no real notice served on William Dorris by R. B. Wigton or his successors in title to this lease, that they intended to terminate the lease.] [5]

[Now, gentlemen of the jury, we say to you here, that the only question for you to decide, and we are going to submit that question to you and leave it with you to decide, is whether this lease was renewed in pursuance to the agreement made October 7, 1886. It is the duty of the jury to say whether this lease was extended under the evidence in this case. Mr. Wigton says that there was not any extension entered into between these parties, and that is about the only evidence, outside of this letter, which the plaintiffs ask you to infer was in corroboration of his testimony, that there was not an extension of the lease, but simply a holding over until some other lease could be entered into.] [6]

[Now, gentlemen of the jury, Mr. Dorris' testimony has been read to you. He testifies that there was an extension, and the defendants ask you to say that there was, because the plaintiffs entered into or rather still kept possession of the property and went on and mined the coal and burned the coke in the same manner as they had done previously to January 1, 1892. We say to you, gentlemen of the jury, that this is evidence for you to consider, the fact that they did go ahead and mined this coal and burned this coke in the same manner that they had done under the original lease, that is evidence for you to take into consideration in arriving at your verdict.] [7]

Verdict and judgment for defendants. Plaintiff appealed.

*Errors assigned* were (1, 23) rulings on evidence, quoting the bill of exceptions; (5, 6, 7) above instructions, quoting them.

*Leoni Mellick*, of *Mellick, Potter & Deckert*, with him *H. H. Waite*, for appellant.—A lease for five years cannot be made or renewed verbally under the statutes of fraud and per-

juries: Jennings v. McComb, 112 Pa. 518; McDowell v. Simpson, 3 Watts, 129; Hill v. Meyers, 43 Pa. 170; Walter v. Transue, 17 Pa. Superior Ct. 94; Whiting & Co. v. Pittsburg Opera House Co., 88 Pa. 100; Christy v. Barnhart, 14 Pa. 260.

*David L. Krebs* and *Thomas H. Murray*, with them *Thos. F. Bailey*, for appellees.—The statute of frauds is only to be invoked for the benefit and for the protection of an alleged lessor or grantor, and all the cases cited by the learned counsel for the appellant lay down this principle in unmistakable language.

The statute of frauds and perjuries can have no application here, for the reason that the verbal arrangements are corroborated by the writings in the case, the indorsement and the letter.

The statute of frauds and perjuries has no application for the reason that there is no new lease created, but the renewal simply of the previously uncontradicted existing contract, and such a renewal is not within the purview of the statute.    The court, therefore, was clearly right in admitting this oral testimony in connection with the other testimony in the case : Rohbock v. McCargo, 6 Pa. Superior Ct. 134.

OPINION BY MR. JUSTICE ELKIN, June 3, 1907:

The agreement for the extension of the term entered into in 1886 contained the following covenant : " If at the expiration of the said extended term of five years from January 1, 1887, this lease shall not be renewed, the said William Dorris shall pay to the said R. B. Wigton & Sons the four-tenths of the value of the coke ovens upon said tracts at the time. " This suit was brought on the ground that the lease was not renewed, by reason of which failure liability attached to pay four-tenths of the value of the coke ovens.    The defendants deny the averment and positively assert that the lease was renewed as contemplated in the agreement.    The liability of appellees depends solely upon whether the lease was renewed or not.    Here, then, is a sharply defined issue of fact, and the only questions which can arise are those which relate to the admission or rejection of testimony and whether the evidence produced was sufficient in law to constitute a renewal.    There is no doubt about the intention of the parties.    It appears in the agreement.    Coal was to be mined and coke manufactured

and for this purpose coke ovens were to be built. The lessees undertook the burden, but, foreseeing that the coal might not be exhausted or all the coke manufactured, before the expiration of the extended term, provided against the contingency of failure to extend the lease by requiring the lessor to pay his proportionate share of the cost of the coke ovens left on the premises. The extended term to which this covenant applied expired January 1, 1892, at which time, if the lease was not extended or if satisfactory arrangements had not been made for its renewal, lessees had the right to demand from Dorris his proportionate share of the cost of the coke ovens. That no demand was made for a period of ten or twelve years after the liability was supposed to attach, is strongly persuasive that the parties themselves did not consider such a liability to exist at the time of the expiration of the extended term of 1892. This can only be accounted for on the ground that both parties considered the lease renewed within the meaning of their covenant. Lessor and lessees after the expiration of the extended term dealt with each other on the basis of a continuing lease under which the operations were conducted. Coal was mined, coke was manufactured, royalties were paid, and accounts rendered in the same manner as theretofore for several years thereafter. In the very nature of things, it does not seem possible that these relations could have existed between careful business men in a transaction involving large sums of money in the absence of an agreement extending the term and defining the rights of the parties. The appellees contend that the agreement to renew the lease was evidenced in writing and by parol. At the trial a large amount of testimony was introduced in support of this position. The first and second assignments seek to convict the trial judge of error because, against the objection of appellant, he instructed counsel to read the indorsement on the back of the 1886 agreement to the jury. It was necessary for plaintiff to offer this agreement in evidence because it was the foundation of his suit. He did so, and cannot now complain that some part of it may have done him harm. Nothing is better settled than when a party offers a paper in evidence he must offer the whole of it. If some parts of it require explanation, the burden is upon him to explain: Cary v. Cary, 189 Pa. 65. The agreement with the

indorsement thereon was in the possession of plaintiff and had been for many years. When it was produced at the trial and offered in evidence, it was entirely within the rights of the defendants to insist that all of it, including the indorsement, should be read to the jury, and it was the duty of the trial judge, upon request made, to so order. It was a single item of evidence relevant to the issue which, taken in connection with other testimony, was proper for the jury to consider.

The third assignment relates to the letter bearing date December 5, 1891, written by the Wigtons to Dorris in reference to the renewal of the lease, then soon to expire. We can see no reason why this letter should not. have been introduced in evidence. It did not conclusively establish any fact, but it was an item of evidence tending to show that the parties were negotiating for a renewal of the lease before the expiration of the term. It also tended to show the intention of the parties with respect to the renewal of the lease, and was in corroboration of the testimony of Mr. Dorris. The effect of it, of course, was for the jury.

A large number of the assignments go to the question whether this case comes within the statute of frauds. It is urged with much force and ability that a lease for five years cannot be either made or renewed by parol because in violation of the statute. The general rule on this question has become elementary in the law of real estate, but its application to the facts of a particular case, or whether it has any application at all, is often difficult to determine. It must not be overlooked, however, that in the present case this question is not raised for the purpose of ascertaining the rights or liabilities of the parties in the lease " verbally extended." The parties after January 1, 1892, treated the lease as subsisting and neither party stopped to inquire whether it had been renewed in writing or by parol. The lessees mined the coal and manufactured the coke, and the lessor received the royalties under the terms of the original lease and its subsequent extensions as they had always done before. No one denied the existence of the lease or raised any question as to the term being properly and legally extended. This question was not raised until many years after the coal was exhausted, or until mining operations had ceased under the lease, and then only in a collateral proceeding. The

covenant in the agreement of 1886 requiring Dorris to pay four-tenths of the value of the coke ovens if "this lease shall not be renewed" at the expiration of the term, is silent on the method of renewal or the length of the term for which it was to be renewed. The most reasonable interpretation of the contract is that it was to be renewed in a manner satisfactory to the parties and for such a length of time as might subsequently be agreed upon. It might be for two, three, five or ten years. Any length of term and any conditions, satisfactory to the parties at the time of renewal, would be a compliance with the covenant. The covenant did not in express terms nor by necessary implication, require that the lease should be renewed for a term of five years or longer, and the courts will not read into the agreement what the parties themselves did not insert. This court held in Moore v. Miller, 8 Pa. 272, that a parol agreement to enter upon the land of another for the purpose of digging ore, erecting buildings and doing other necessary things in the prosecution of the work, paying for the privilege a certain fixed royalty for each ton of ore mined and removed was a contract of lease and could be enforced. It was said in that case that where there was evidence on both sides in relation to the alleged contract the court was not bound to take it from the jury, whose province it was, under proper instructions by the court, to determine the duration and character of the lease. There are many questions in which matters of law and fact are so closely blended that they must of necessity be submitted to the jury with instructions by the court. The case at. bar belongs to this class. The testimony was conflicting, but was sufficient, if that offered by the defendants was believed, to justify the jury in finding as a fact that the lease had been renewed in a manner and for a term satisfactory to the parties. The jury have found in favor of the defendants and we see no reason to disturb their finding. Again, it is conceded that the lessees remained in possession of the leased premises, mining coal and manufacturing coke, for a period of years, and having thus enjoyed the benefits of the contract, they cannot now repudiate it by saying that no such contract ever legally existed. They cannot accept all the benefits of the contract and then repudiate its obligations. Equity treats the contract thus executed as determining the rights of the

parties, and will not permit one of the parties to repudiate it after he has enjoyed all of its substantial benefits. The lessees, in the present case, treated the lease as renewed, as did the lessor, both parties accepting the benefits resulting therefrom and either party will be estopped, many years after operations had ceased under the terms of the lease, from denying that in contemplation of law it ever existed.

After careful examination of the twenty assignments brought to our attention, we have concluded that none of them constitute reversible error.

Judgment affirmed.