WONALANCET COMPANY *vs.* F. E. BANFIELD ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 8th—decided April 25th, 1933.

*Richard D. O'Connell,* with whom, on the brief, was *Joseph P. Cooney,* for the appellant (plaintiff).

*William N. DeRosier,* for the appellees (defendants).

BANKS, J. The defendants are the directors and trustees in liquidation of The Birge Company, which

in October and November, 1929, executed three written contracts in which it agreed to buy from the plaintiff a total of thirty-five bales of cotton material, shipments to be made as specified by The Birge Company, and payments to be made within thirty days from the date of invoice. In accordance with the terms of the contracts, the plaintiff, on divers dates up to May 25th, 1931, shipped nine bales of material to The Birge Company, but the latter company has failed to specify shipments of the remaining twenty-six bales. On March 15th, 1930, The Birge Company attempted to cancel two of the contracts, but the plaintiff did not acquiesce in their cancellation, and wrote that it would "string along" with the contracts and "would not press The Birge Company for shipping instructions." Prior to January 7th, 1932, The Birge Company instituted proceedings for the purpose of winding up its corporate existence by liquidation, and the defendants, as directors thereof, were appointed trustees for such purpose. The assets in the hands of the trustees were more than sufficient to satisfy all claims of creditors, including the claim of the plaintiff. On January 5th and 7th, 1932, the treasurer of The Birge Company wrote the plaintiff the letters printed in the footnote. The plaintiff made no tender or offer to ship the goods in question, but brought this action against the de-

---

"January 5, 1932.

"Wonalancet Company
179 Summer Street
Boston, Massachusetts

"Gentlemen: Your letters to The Birge Company have been referred to me as Treasurer. I regret to say that for financial reasons we are terminating the corporate existence of the company and hope it will be possible eventually to realize sufficient from the sale of the plant and machinery to discharge the indebtedness.

"It seems that all the bills for materials furnished by you have been paid and I do not understand that the company is further

fendants as trustees in liquidation of The Birge Company, alleging that the latter had failed to specify shipments of the material although a reasonable time had elapsed, and that it had tendered the undelivered material to The Birge Company and demanded the contract price therefor, which it had failed to pay.

Under the terms of these contracts, shipments were to be made by the vendor as specified by the vendee. It was the duty of the latter to direct shipments within a reasonable time. The court has made no finding as to whether The Birge Company failed to order shipments within a reasonable time, and we do not understand that the plaintiff relies upon any such failure as constituting a breach of the contracts. It claimed upon the trial, and now claims, that the letter

obligated to you under these circumstances and the terms of the memorandum of 1929 to which you refer.

"It seems unlikely that you desire to deliver us more materials and wait for payment until the final winding up of our affairs with the uncertainty as to what and when the payment will be.

"Yours very truly,
"Roger S. Newell."

January 7, 1932.

"Wonalancet Company
Nashua, New Hampshire

"Gentlemen: Your bills against The Birge Company are received. Speaking for the trustees of that company in its winding up process, these bills cannot of course be approved, especially as you have selected the very bottom price in your computation. The price may be more favorable long before the time arrives for the determination of the amount to be paid creditors. It seems that even if we could seriously consider your claim, we would probably do much better to specify shipment of the goods, sell or use them in the winding up process, and pay for them at the time of the final settlement of the affairs of the company.

"In other words, if you insist on the last ounce of flesh under your claimed contract, we have the same privilege in the matter of the shipment of materials.

"Yours very truly,
"Roger S. Newell
"Treasurer and Trustee."

of January 5th, 1932, constituted a breach of the contracts. If so, it would be upon the ground that the letter contained a repudiation of the contracts, or a refusal to perform of such a character as to amount in law to a breach by anticipation. A breach of an executory contract by anticipation, occurs only when there is a distinct, unequivocal and absolute refusal to perform. "The renunciation must be so distinct that its purpose is manifest, and so absolute that the intention to no longer abide by the terms of the contract is beyond question." *Wells* v. *Hartford Manilla Co.*, 76 Conn. 27, 35, 55 Atl. 599; *Finlay* v. *Swirsky*, 98 Conn. 666, 674, 120 Atl. 561; *Dingley* v. *Oler*, 117 U. S. 490, 6 Sup. Ct. 850; 3 Williston, Contracts, § 1324; 55 Corpus Juris, 493.

Far from containing an unequivocal refusal to perform, these letters adopt a distinctly equivocal attitude. The next step in the execution of the contracts required of The Birge Company, was to give instructions for the shipment of the material. While it is apparent that it did not want the material, and endeavored to persuade the plaintiff not to insist upon its delivery, the letters contain no refusal to accept it, but rather a suggestion that, if required, they would specify shipment, but in that event would take advantage of any rights they might have under the contracts as to the time when shipping instructions were to be given. In neither of the letters can there be found a renunciation of the obligation to give orders for the shipping of the material in accordance with the terms of the contracts, so absolute and unequivocal as to leave no question of an intention no longer to abide by the terms of the contracts in that respect.

Greater reliance appears to be placed by the plaintiff upon its contention that the letter of January 5th repudiated the obligation of the buyer to pay for the

goods within thirty days after date of invoice, in accordance with the provisions of the several contracts. The letter contains no statement that The Birge Company would not or could not pay for the material, and the statement that it was terminating its corporate existence did not necessarily indicate its inability to pay. It appears, in fact, that there were assets in the hands of the trustees more than sufficient to pay all claims in full. That the letter was a notification that it would not or could not pay in strict accordance with the terms of the contracts, that is, within thirty days of the date of invoices, is claimed to appear from the last paragraph, which reads: "It seems unlikely that you desire to deliver us more materials and wait for payment until the final winding up of our affairs with the uncertainty as to what and when the payment will be." This is not a statement that The Birge Company would in no event pay for the goods, if shipped, until the final winding up of its affairs. Nor does it appear conclusively that, if payment were made at that time, it would not be in accordance with the terms of the contracts. The statute (General Statutes, § 3471) regarding the voluntary dissolution of corporations, provides that the trustees shall limit a time for the presentation of claims, which shall not be less than four months, and that they shall pay the claims that have been allowed or found due as soon as practicable. It does not appear that when the time came when The Birge Company would have been obliged to furnish shipping instructions, which the plaintiff had agreed not to press for, the former would not have been both able and willing to make payments in strict accordance with the terms of the contracts. The plaintiff may well have had a belief that such would not be the case, sufficient to furnish the foundation for an inference that there would be an ultimate

breach of its contracts by The Birge Company. "To use this inference of a probable future breach as the equivalent of a present, absolute, unequivocal renunciation of the contract, or refusal to abide by it, is plainly without justification. The trouble with the claimant's position in this regard is that it attempts to transform suspicion, belief, and inference, into things distinct, certain, and absolute, and thus create an unequivocal and absolute renunciation of an agreement out of imaginings and conclusions. This both the letter and the spirit of the rule forbids." *Wells* v. *Hartford Manilla Co., supra,* p. 37. Unquestionably these letters indicate the desire and intention of The Birge Company to get out of these contracts if it could, but the trial court correctly held that they did not amount to an anticipatory breach of the contracts which would give the plaintiff a right to rescind and bring suit for damages, or to treat the contract as still existing, tender performance, and sue for the purchase price.

We do not consider the question, not raised in the court below, as to whether the trustees in liquidation of a corporation are the proper parties defendant in an action based upon an alleged breach of contract by the corporation.

There is no error.

In this opinion the other judges concurred.

