Winter Garden Citrus Growers Ass'n v. C. O. Willits.
C. O. Willits v. Winter Garden Citrus Growers Ass'n.

151 So. 509.
Division B.
Opinion Filed December 5, 1933.
Petition for Rehearing Denied January 4, 1934.

*Tilden & Hays* and *W. H. Poe,* for Plaintiff in Error;
*G. P. Garrett,* for Defendant in Error.

Buford, J.—Willits sued Winter Garden Citrus Growers Association, exhibiting a declaration in three counts. A judgment was entered in favor of the plaintiff on counts one and two. During the course of the trial the court indicated that it would direct a verdict for defendant on count three. Thereupon, plaintiff took judgment of non-suit.

Plaintiff sued out writ of error from this judgment while defendant sued out writ of error from the judgment entered against it on counts one and two of the declaration.

Count three was based upon the claim for net profits received by the defendant as shown by certain so-called certificates of shipment.

The record shows that there was an account stated between the parties and a settlement had after the issuance of the certificates by the defendant to the plaintiff. The first and second counts were based on an alleged breach of contract between the parties.

To all counts of the declaration there was a plea of "never was indebted."

To the third count there was a plea that defendant did not promise the plaintiff in the manner and form alleged. The third plea denied the alleged promise to plaintiff as set forth in the first and second counts of the declaration.

The fourth plea was a plea of accord and satisfaction as to the first and second counts of the declaration.

The fifth plea alleged that defendant did not promise as alleged in the first and second counts of the declaration and set up what defendant alleged its contract to be with the plaintiff.

The sixth plea alleged that the plaintiff ceased to be entitled to participate in the equities and profits of the defendant and had forfeited same by withdrawal of membership from the defendant association.

The seventh plea alleges in effect that the several items referred to in the third count of plaintiff's declaration represent proportionate estimated increases in the assets of the defendant due to profits made in the operation of its packing plant and other operations and is reserved for the payment of fixed indebtedness and future losses, and ultimately for the distribution of such amounts to members of the association as board of directors of defendant may from time to time deem prudent, and it further alleges that neither its

board of directors nor its membership have ever directed or ordered the distribution of such fund, or any part thereof, to any of its members.

The eighth plea was:

"That after picking, packing, shipping and selling plaintiff's fruit, described in the declaration, and with full knowledge of all of the facts with reference thereto, plaintiff and defendant stated between them a mutual account and balance struck therein was paid and accepted by the respective parties."

Under the state of the record as we find it, we cannot say that the court erred in indicating that a verdict would be directed in favor of the defendant on count three of the declaration. All of these certificates mentioned in that count of the declaration were in the hands of plaintiff at and before the date of the settlement between the plaintiff and the defendant in which settlement plaintiff paid to defendant a certain sum of money then found to be due from plaintiff to defendant on account stated between them, which settlement and account was had because of the determination of the plaintiff to withdraw his membership from the defendant. Therefore, the judgment of non-suit should be and is affirmed.

The evidence is conflicting as to whether or not the item for breach of contract constituting the basis of the claim as set forth in the first and second counts of the declaration was taken into consideration in that settlement, but the record is clear that there was at that time no discussion between the parties of such claim for breach of contract.

The contract is one in the usual form between a co-operative marketing association of citrus fruits with a member, a citrus fruit grower.

Pertinent parts of the contract to be construed in this

case are contained in Sections 1, 3, 5, 6, 7, and 15, which are as follows:

"1. That GROWER hereby appoints ASSOCIATION his agent, and ASSOCIATION hereby agrees to act as such, for the purpose of picking, hauling, processing, packing, shipping, selling and marketing all the citrus fruits which shall be grown for shipment and sale by GROWER or for him, or shall be owned or controlled by him, upon any tract or tracts of land in the County of Orange, State of Florida, at such time or times, and from time to time, and in such quantities as GROWER and ASSOCIATION, or their agents, acting in conjunction, may determine. There shall be excepted herefrom such citrus fruits of GROWER, if any, as shall, by reason of their location, be handled by some other Citrus Growers Association affiliated with the Florida Citrus Exchange."

"3. That ASSOCIATION agrees to pick, pack and market said fruit whenever a market may be found for the same which, in the judgment of ASSOCIATION, and in accordance with its rules and regulations, shall justify said marketing. ASSOCIATION shall not be liable for any damage that may be sustained through Act of God or public enemy, or accidents in shipment, or storage, or unavoidable failure to secure suitable storage or markets for the proper handling, storing or marketing of said fruit. Any loss occasioned by GROWER shall be borne by him."

"5. That the marketing shall be done by ASSOCIATION through the Florida Citrus Exchange or with its approval and in accordance with its rules and regulations, now or hereafter adopted and observed by it; it being mutually understood that it is a purpose of this agreement to maintain and to increase to its greatest efficiency the Florida Citrus Exchange and that ASSOCIATION, through the medium of its marketing contract between it and the Citrus Sub-Exchange

of which it is a member, and through the contract of said Sub-Exchange with the Florida Citrus Exchange, intends to assign such portion of its rights hereunder as will give the said Florida Citrus Exchange effective control of the marketing of the fruits of GROWER."

"6. That all fruits of GROWER handled hereunder may be marketed in assorted lots or in pools with other fruits of like variety and grade and if marketed in pools, the proceeds of any or all shipments shall be prorated or pooled with the proceeds of any other fruit of like variety and grade and marketed by ASSOCIATION, during such period or periods as its Board of Directors may determine."

"7. That ASSOCIATION shall pay to GROWER the returns from the sale of his fruit, being either the amount received therefor, or in the event that it is pooled with other fruit, the pro rata amount of the receipts of the entire pool, less its regular charges for picking, hauling, packing, shipping and marketing the same and less authorized reserves for retiring bonds, if any, and for paying interest on the same. Said regular charges shall include the lawful assessments made by the Florida Citrus Exchange and by the Citrus Sub-Exchange of which ASSOCIATION is a member, said assessments covering a pro rata portion of the necessary selling, overhead and other expenses of said organizations, together with assessments for authorized reserve funds."

"15. That there are no oral, or any other conditions, promises, covenants, representations or inducements in addition to, or at variance with any terms hereof, and that this agreement represents the voluntary and clear understanding of both parties fully and completely."

What will constitute a breach of contract is a matter of law to be determined by the Court. Whether or not that has occurred which would constitute a breach of contract is

a matter of fact to be determined by a jury. Section 1 of the contract as above quoted, provides that the Association agrees to pick, haul, process, pack, sell and market the citrus fruit of the Grower "at such times and from time to time and in such quantities as the Grower and Association or their agents acting in conjunction may determine." Section 3 of the contract provides as follows:

"That the Association agrees to pick, pack and market said fruit whenever a market may be found for the same, which, in the judgment of Association, and in accordance with its rules and regulations, shall justify said marketing."

Now it is the contention of the plaintiff, as set forth in his declaration, that on the 1st day of March, 1931, the plaintiff agreed with the defendant that his entire crop of Marsh seedless grapefruit for the citrus season A. D. 1930-1931 then on the trees should be forthwith picked, packed, shipped and marketed and that the Association did then and there promise and agree in accordance with the provisions of Section One of the contract to immediately pick, pack, ship and sell the plaintiff's crop of grapefruit and that the price at that time was such as to net the Grower 90 cents to $1.00 per box for such packed fruit; but that the defendant arbitrarily decided not to pick, pack and ship plaintiff's grapefruit at that time, but instead determined to delay the packing of such grapefruit until some later day and that the defendant did not in fact pick, pack and ship such grapefruit until about the 1st of June, 1931, at which time there was so little demand for the fruit on the market that plaintiff sustained a loss of the total value of the fruit, plus a part of the expense of shipping.

As we construe the contract, if there was no meeting of the minds and agreement between the Grower and the Association on March 1, 1931, to immediately pick, pack, ship

and market plaintiff's grapefruit, then, under the provisions of Section 3 of the contract, the Association could use its own judgment about when to pick, pack, ship and market the grapefruit, and an honest error in judgment would not be cause upon which plaintiff could base and maintain a suit for damages. But if there was a determination on March 1, 1931, by the Grower and the Association, or their agents acting in conjunction, that plaintiff's grapefruit should be immediately picked, packed, shipped, and marketed, and, pursuant to such determination, the Association, or its authorized agent, for it, agreed with the Grower that the Association would immediately pick, pack, ship and market plaintiff's grapefruit, then it was bound under the contract to do so and the failure to do so constituted a breach of contract. Whether or not these acts constituting breach of the contract occurred was a question for the jury to determine.

There is conflict in the evidence as to the extent of the determination and agreement between the parties. That conflict was determined by the jury adversely to the plaintiff in error. There was sufficient evidence to go to the jury on the facts of whether or not the breach of contract had occurred. The jury returned its verdict and the trial court refused to set it aside. It is not so incompatible with the record and with justice that this Court should disturb it. Therefore, the judgment is affirmed.

Affirmed.

Davis, C. J., and Whitfield, Ellis, and Brown, J. J., concur.

Terrell, J., not participating.