## M. Shapiro & Son Construction Company, Inc. *v.* Harry C. Battaglia et al., Executors (Estate of Joseph Battaglia)

Brown, C. J., Jennings, Baldwin, Inglis and O'Sullivan, Js.

Argued June 7—decided August 14, 1951

*M. J. Blumenfeld*, with whom was *Israel Nair*, for the appellants (defendants).

*Hugh M. Alcorn, Jr.*, with whom were *Harold J. Eisenberg* and, on the brief, *Henry P. Bakewell*, for the appellee (plaintiff).

BALDWIN, J. The plaintiff, a general contractor engaged in constructing large housing projects, sued the defendants, executors under the will of Joseph Battaglia, a subcontractor, to recover damages for the breach of a construction contract. The defendants denied the breach and filed a counterclaim alleging a breach on the part of the plaintiff. The jury returned a verdict for the plaintiff on the complaint and counterclaim and the defendants appealed, assigning errors in the charge and in rulings on evidence.

In 1946 the plaintiff was under contract to construct 191 single-family dwelling houses on a site in New Britain. On July 18 it executed an agreement with the decedent by which he was to furnish all the material and equipment and do all the work necessary in preparing the site for building houses. This included clearing and grading the land, constructing the roads, sidewalks and driveways, placing the curbing, excavating for and laying the storm-water and sanitary-sewer laterals, digging the cellars and redistributing the top soil. The contract required the decedent to complete his work "at the earliest possible date" and stated that the time fixed for performance was of the essence

of the agreement. It also provided that the decedent should commence work when directed by the plaintiff and carry it on, at such times and in such order, with such men and equipment, as the plaintiff might direct, so that the work could be co-ordinated with that of the other contractors and the whole project could be completed on time. It further stipulated that if the decedent should not commence the work when directed or should abandon it, or should not perform it within the time specified, the plaintiff could terminate the contract by giving notice, complete the work and hold the decedent responsible for increased costs and damages. The decedent also had a contract with the city of New Britain to put in the storm-water and sanitary sewers on the same site and to complete that installation in 143 days. So much of the facts was not in dispute.

The parties were at issue over the performance of the contract, its subsequent breach and abandonment and the responsibility for the cause which brought about a breach. The plaintiff offered evidence from which it claimed to have proved the following facts: The work which the decedent undertook was singularly important because the general progress of the whole job depended upon his efficient and expeditious performance. The plaintiff employed him because he was to put the storm-water and sanitary sewers in for the city, work which had to precede the building of roads, curbs and sidewalks by the plaintiff in furtherance of its general contract. Shortly after the execution of the contract on July 18, 1946, the plaintiff directed the decedent to start work. It soon became apparent that neither the work for the city nor for the plaintiff was being carried forward effectively, owing to the failure of the decedent to plan his work properly or to have enough men and equipment to do it. Although the

city gave instructions to commence the performance of its contract on August 2, the decedent delayed until August 19. Instead of completing the work in 143 days as agreed, he took 442 days. Beginning with a formal complaint on September 25, 1946, concerning the progress of the work, the plaintiff repeatedly, insistently and justifiably, by letter and telegram and in conferences between representatives of the parties, complained to the decedent about his delays and noncompliance, but all to no avail. This course of conduct continued throughout 1946 and 1947. The plaintiff in order to co-operate with the decedent prepared work schedules which he failed to adhere to, made suggestions and recommendations which he failed to heed, and finally relieved him of part of the work he had agreed to do, all to no purpose. Twice in 1947, without advising the plaintiff, the decedent advertised all of his contracts and equipment for sale. On December 22, 1947, the decedent stopped work altogether because of the onset of winter, although other contractors continued on.

After the death of the decedent on January 18, 1948, the defendants, having been appointed executors, sought to secure the release of the decedent's estate from the performance of the contract, by suggesting that they, individually, would continue performance. The plaintiff refused this proposal. At this time all of the decedent's equipment was withdrawn from the job, repaired, painted and displayed for sale. When the decedent ceased work in December, that portion of the job remaining to be done was the most expensive and least profitable for the subcontractor. Representatives of the parties met on March 23, 1948, and all matters of back charges and extras claimed by the defendants were adjusted. A further conference, for the purpose of fixing a definite date for the resumption of work, was

set for March 29. Notwithstanding this arrangement, the defendants dismissed all their employees on March 27 and filed final social security and old age assistance tax returns. On March 29, they agreed with the plaintiff's representatives to resume work April 5. When they so agreed, the defendants had no employees, their equipment was for sale, and they had no bona fide intention of resuming work. Although the weather was suitable for work on April 5, they failed to resume work then or on the two days following, in spite of further efforts by the plaintiff to get them to do so. On April 7, 1948, the plaintiff terminated the contract by a letter to the defendants which they received on April 8. The defendants abandoned the contract on or about April 5. The plaintiff completed the work at an additional cost of $23,871.36.

The defendants offered evidence from which they claimed to have proved the following facts: Their contract called for a base price of $130,000 subject to additions or deductions. On or about March 31, 1948, the plaintiff submitted a list of adjustments, requesting acceptance thereof as confirmation that the original agreement as supplemented and modified would continue in full force and effect. At conferences on March 23 and 29 the parties set April 5 as the tentative date for the resumption of work. The defendant Harry Battaglia assured the plaintiff that the defendants' equipment had been overhauled and repaired and was ready to commence work when the weather and ground conditions permitted. The two defendants and five additional key men had been at work during the winter painting and overhauling the equipment. The defendants' employees were given a week's vacation on March 27 and told to report for work April 5, which they did. On April 4 the defendants made preparations to begin work. The weather and ground conditions were not

suitable for resuming on April 5, 6, or 7. The failure of the plaintiff to put in the curbs, which it had agreed to do, and the delay of the gas company in completing its work of putting in gas mains and laterals made it impossible for the defendants to resume operations. Although they made reasonable efforts and preparations to do so, it was not possible to begin work on April 5. On April 6 the plaintiff put them off the job, although they were at all times ready, able and willing to perform the contract. Their failure to resume work on April 5, 6 or 7 did not substantially or materially affect the time for the completion of the contract. The plaintiff itself breached the contract on April 7.

The defendants assign error in certain portions of the charge and in the refusal of the trial court to charge as requested. They allege that the court erred in its charge because it made the whole issue of the abandonment of the contract depend upon the answer to two questions: Did the parties agree that the defendants would resume work on April 5, 1948? If so, did the defendants fail to resume work on that day? The defendants have culled two passages from the court's charge and subjected them, bare of the context in which they were placed and isolated from the rest of the charge, to their criticism. It is axiomatic that a charge must be read and considered as a whole. *Cackowski* v. *Jack A. Halprin, Inc.,* 132 Conn. 67, 71, 42 A. 2d 838; *State* v. *Hayes,* 127 Conn. 543, 585, 18 A. 2d 895. It was the duty of the court to construe the contract and to instruct the jury concerning the legal consequences attendant upon the facts as they might find them to be. *Cone* v. *Cullen,* 108 Conn. 126, 129, 142 A. 674; *Mills* v. *Roto,* 104 Conn. 645, 648, 133 A. 913; *Straus* v. *Kazemekas,* 100 Conn. 581, 589, 124 A. 234.

The charge took up in considerable detail an explanation of the several pertinent provisions of the

contract. The court explained that, even though the agreement called for completion at the earliest possible date and made time of the essence of the contract, that meant no more than completion as soon as reasonably possible. The provision of the contract which permitted the plaintiff to terminate it if the defendants failed to commence or abandoned the work, or failed to complete it within the time called for by the agreement, had the most vital bearing upon the case. The court read it to the jury and properly explained it. The decisive question was whether the defendants had abandoned, and consequently breached, the contract. This was a question of fact. *Chinigo* v. *Ehrenberg,* 112 Conn. 381, 384, 152 A. 305; *M. J. Daly & Sons, Inc.* v. *New Haven Hotel Co.,* 91 Conn. 280, 290, 99 A. 853; *Winter Garden Citrus Growers Assn.* v. *Willits,* 113 Fla. 131, 135, 151 So. 509; see *Fabrizio* v. *Fabrizio,* 133 Conn. 108, 111, 48 A. 2d 375. The actions constituting an abandonment must be absolute and unequivocal. *Nothe* v. *Nomer,* 54 Conn. 326, 328, 8 A. 134; *Wonalancet Co.* v. *Banfield,* 116 Conn. 582, 586, 165 A. 785. The charge given clearly left the answers to these questions to the jury. With reference to these issues, the court instructed the jury: "If the failure of the defendants to resume work upon this contract on April 5th was absolute and unequivocal, as claimed by the plaintiff, it constituted an abandonment and was a total breach of the contract. A contractor breaches his contract when he abandons his work, and to abandon means to relinquish, renounce, to surrender." The court then went on to say that ordinarily a breach occurs when the contractor fails to perform substantially in accordance with the terms of the contract, and pointed out that the breach could be in this instance the failure of the defendants to resume the work on April 5 as the plaintiff claimed they had agreed to do.

But the court left it to the jury to determine whether that was, in fact, the agreement, or whether it was to resume if the weather and ground were right, as the defendants claimed. And, again, the court stated the proposition this way: "When a party to a contract refuses to go forward with the contract he thereby abandons the contract and cannot complain if the other party to the contract deems the contract breached. . . . Did the defendants fail to continue with the contract? If the defendants failed to continue with the contract, as alleged by the plaintiff, unequivocally, without question, failing to continue the work on April 5th, they abandoned the work, and the plaintiff is justified in terminating the contract."

In the light of the claims of proof as to the conduct of the defendants, the jury could have found that their failure to resume work on April 5, 6 or 7 constituted an abandonment of the contract, if there was a specific, unconditional understanding that they would resume on April 5, as the plaintiff claimed. On the other hand, the defendants claimed their promise to resume was conditional upon suitability of weather and ground. The plaintiff claimed to have proved that the ground and the weather were suitable. The jury could have found the version of the understanding with reference to the resumption of work to be that claimed by the defendants and yet have found that the ground and the weather were suitable for their resuming work and that their failure to do so, under all the circumstances, constituted an abandonment. The court properly construed the contract, explained its legal effect and left it to the jury to determine the facts. The charge as a whole, considered in the light of the claims of proof, adequately and fairly presented the question of the breach of the agreement to the jury.

The defendants further allege that the court erred

in failing to instruct the jury to consider whether the failure to resume work on April 5 was material. The contract required performance "at the earliest possible date," time was made of the essence, and the plaintiff's claims of proof demonstrate that prompt performance by the defendants was essential to the accomplishment of the purposes of the agreement. Therefore, as a matter of law the breach of the promise to resume work on April 5 was material. *Mazzotta* v. *Bornstein*, 104 Conn. 430, 437, 133 A. 677; 17 C. J. S. 1073-4.

The defendants assign error in the admission as evidence of certain letters and telegrams from the plaintiff to the defendants. They did not deny their receipt but objected generally to their admission on the ground that they were self-serving declarations. Some of the letters were answered and some were not. Most of the communications made reference to conferences between the parties which took place shortly before they were written and were confirmatory of those conferences or purported to repeat some part of the substance of what transpired at them. Others dealt with the interpretation of the contract, and still others contained instructions for the conduct of the work. All of them made demands for expediting the work. The contract stipulated that the plaintiff could from time to time give instructions to the decedent, and the verbal testimony indicated that it had done so. It also appears from the finding that the letters and telegrams were written in connection with the negotiations and the conduct of the parties. They were not offered to prove any particular fact therein stated but to show generally the course of negotiations and the conduct of the parties which finally culminated in the abandonment of the contract, as claimed by the plaintiff, on or about April 5. In the following cases, letters in one or more of the classes noted were held admissible. *Hoadley* v. *Sav-*

*ings Bank*, 71 Conn. 599, 607, 42 A. 667; *Southern Pac. Co.* v. *Stevens*, 258 F. 165, 166; *Steil* v. *Holland*, 3 F. 2d 776, 777; *Seaboard Air Line Ry. Co.* v. *Goss*, 214 Ala. 102, 103, 106 So. 607; *Dolman Co.* v. *Rubber Corporation*, 109 Cal. App. 353, 358, 293 P. 129; *Kesner* v. *Faroll*, 268 Ill. App. 531, 535; *Farmers Loan & Trust Co.* v. *Mock*, 102 Ind. App. 270, 276, 2 N. E. 2d 235; *Ruthven Bros.* v. *American Fire Ins. Co.*, 102 Iowa 550, 563, 71 N. W. 574; *Krinsky* v. *Whitney*, 315 Mass. 661, 672, 54 N. E. 2d 36; *Johnson* v. *Von Scholley*, 218 Mass. 454, 457, 106 N. E. 17; *Johnson* v. *Meyers*, 91 Ore. 179, 183, 177 P. 631; *Wallace* v. *Dorris*, 218 Pa. 534, 546, 67 A. 858; *Goldstein* v. *Old Dominion Peanut Corporation*, 177 Va. 716, 730, 15 S. E. 2d 103.

There is no error.

In this opinion the other judges concurred.