Robert P. Kennedy, J.
Almost identical actions were brought by plaintiffs to recover for injuries sustained by the infant, an employee of Spancrete Corporation, allegedly as the result of a defective ¡crane being used by Spancrete. The two actions were consolidated for trial by order dated October 3, 1974.
Spancrete, on November 2,1970, entered into what is variously described by plaintiffs as a lease and sale-lease agreement to obtain the crane from defendant Pettibone. This agreement was approved ¡by Pettibone on December 1, 1970. On the same date Pettibone executed a “ Without Recourse Assignment ” to defendant General Electric .Credit Corporation. In its answer to plaintiffs’ complaint, in addition to certain admissions and denials, General Electric Credit Corporation set forth as an affirmative defense the claim that the assignment of the agreement to it by Pettibone constituted a secured transaction and that under the terms of section 9-317 of the Uniform Commercial Code it could not be held liable in tort or contract and, therefore, the complaint failed to state a cause of action against it. .General Electric Credit Corporation now moves for summary judgment on that ground.
Neither plaintiffs nor Pettibone has entered any legal opposition to ¡General Electric’s motion. Plaintiffs submitted nothing. Pettibone’s attorneys sent the court a letter. Such is not sufficient to show the existence of a triable issue of fact (6 CarmodyWait 2d, New (York Practice, .§ 39:29).
This situation creates problems without any consideration of the merits of General Electric’s motion. It was said in Geraci *653 v. Fabbozi (161 Misc. 450): “ No affidavits were submitted upon the motion by the defendant. The affidavits submitted by the plaintiff must be accepted jas a .statement of the facts. The allegations of the answer do not aid the defendant.” Even stronger language was used in Banasik v. Reed Prentice Division of Package Mach. Co. (34 A D 2d 746, affd. 28 N Y 2d 770), where, although the party opposing the motion for summary judgment submitted affidavits they were found to be inadequate, the court held (p. 746): ‘ ‘ What will be inferred by the court by reason of the failure of the plaintiff to meet her burden in opposing defendant’s motion for summary judgment is that there is in truth no genuine issue of fact to be tried. ’ ’ From this I conclude that General Electric’s motion must be granted if it has submitted papers and proof which establish its defense sufficiently to warrant the court, as a matter of law, to direct judgment in its favor. General Electric supports its motion with a copy of the agreement, assignment, affidavit by its attorney and an affidavit from one of its district managers. The attorney’s affidavit contains nothing but a recitation of the history of the action, a recital of what the pleadings contain, some allegations based, not on his personal knowledge, but on information and belief the source of which is the district manager’s affidavit, and arguments and conclusions of law. This affidavit is insufficient to justify the granting of General Electric’s motion.
“ It should be observed that the only affidavits submitted by appellant in opposition to the motion were the conclusory affidavits of counsel, which primarily repeated the allegations of the complaint. Such affidavits of an attorney not having personal knowledge of the event, and not stating evidentiary facts are insufficient on ,a motion for summary judgment.” (Davis v. Shelton, 33 A D 2d 707, 708.) Although the court above was dealing with affidavits in opposition to summary judgment, the same rule is applicable to those in support of the motion. The district manager’s affidavit adds nothing to explain what the transaction between General Electric and Pettibone was. The foregoing notwithstanding, the agreement between Pettibone and iSpancrete has been submitted. It is referred to as a lease. ‘ ‘ However, calling an agreement a lease does not make it so if under its terms and provisions it is in fact a conditional bill of sale since f we must look to the rights it confers and the obligations it imposes to determine whether it has the essential attributes of a contract of conditional sale or of an installment sale’.” (Matter of Merkel, Inc., 46 Misc 2d 270, 272.) The agreement obligated Spancrete to “lease” the crane for a *654 minimum period of 34 months and to pay $3,520.14 a month. Most important to our discussion are the provisions dealing with title to the crane. A portion of paragraph 17 has lines drawn through it. That portion states that ‘ ‘ The title to property herein leased and (to all replacements thereof or substitution thereof is and shall remain in the lessor, and said machinery and equipment shall not become a part of any building, by being placed therein or by being annexed thereto There is then added under paragraph 25 “ Special provisions ” the following: “Title will be transferred to the lessee upon completion of the payment schedule. ’ ’ I refer to the deleted portion and the portion added only to show that the parties by their deliberate actions in deleting the quoted portion of paragraph 17 and inserting paragraph 25 made it clear that they were changing a form prepared as a lease to one that showed they intended to create a security interest, that it seems absolutely clear that this “lease ” was in reality a conditional sale and, therefore, governed by article 9 of the Uniform Commercial Code dealing with secured transactions. This view is bolstered by subdivision (1) of section 2-401 of the Uniform Commercial Code: ‘ ‘ Any retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest.” We know, from plaintiffs ’ complaint, the crane was shipped to Spanerete. Similarly, subdivision (37) of section 1-201 of the Uniform Commercial Code says, in part: “ ‘ Security interest ’ means an interest in personal property or fixtures which secures payment or performance of an obligation. The retention or reservation of title by a seller of goods not withstanding shipment or delivery to the buyer (Section 2-401) is limited in effect to a reservation of a ‘ security interest ’ * * * Whether a lease is intended as security is to be determined by the facts of each case; however * * * (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security. ’ ’ For a definition of goods as used in this section see section 9-105 (subd. [1], par. [f]) of the Uniform Commercial Code.
The agreement we are concerned with comes within paragraph (b) above completely. Under this agreement, Spanerete did not have an option. Under paragraph 25 title passed to it automatically upon its making the monthly payments called for, that is, as it is phrased in paragraph (b), “ the lessee shall become *655 * * * the owner of the property for no additional consideration
I realize that I am not dealing with a motion hy Pettibone for summary judgment but feel it necessary to see what its position is in regard to Spanerete and the crane in order to determine what it ¡had to assign to General Electric because, as is said, nemo dat quod non habet — no one can give that which he has not. ¡Since all Pettibone had was a security interest, .that is all it could assign to General Electric. Under section 9-317 of the Uniform Commercial Code, then, General Electric cannot be held liable in contract or tort for Pettibone’s acts or omissions or for Spanerete’s if there be any such.
■Since defendant Pettibone, as stated, has failed to file anything other than a letter in opposition to General Electric’s motion, I will not deal with its objection which, according to the letter,, does not deal with the merits of General Electric’s position but only with the possibility of asserting a cross claim against it. If Pettibone feels it has grounds to proceed against General Electric it has a remedy aside from a cross claim.
General Electric Credit Corporation’s motion for an order dismissing the complaint and directing summary judgment in its favor is in all respects granted.