William MARRON, Plaintiff,

v.

H. O. PENN MACHINERY COMPANY, INC., et al., Defendants.

William MARRON, Plaintiff,

v.

CATERPILLAR TRACTOR COMPANY, et al., Defendants.

Civ. A. Nos. B–75–356, B–76–346.

United States District Court, D. Connecticut.

July 16, 1981.

James M. Kearns, Robert K. Marzik, Stratford, Conn., for plaintiff.

Kevin K. Maher, Gregory C. Willis, Willis & Willis, Bridgeport, Conn., for intervening plaintiff Bridgeport Rolling Mills.

Paul E. Pollock, Bai, Pollock & Dunnigan, Bridgeport, Conn., for defendants H. O. Penn Machinery and Pennco.

John S. Clancy, Bridgeport, Conn., for Caterpillar Tractor Co. and Town Motor Corp.

## RULING ON POST-TRIAL MOTIONS

ZAMPANO, District Judge.

These consolidated cases [1] were commenced by the plaintiff, William Marron, to recover damages for injuries he sustained when a forklift truck operated by a fellow employee backed over his ankle during the course of his employment at Bridgeport Rolling Mills ("Brimco"). Named as defendants were Caterpillar Tractor Company ("Caterpillar"),[2] the manufacturer of the forklift, and H. O. Penn Machinery Company, Inc. ("H. O. Penn"),[3] a distributor of

---

1. The first case commenced was *Marron v. H. O. Penn Machinery Co.*, Civil B–75–356, and was based on a theory of vicarious liability of lessors of motor vehicles under Conn.Gen.Stat. § 14–154a (1970), and on the direct negligence of H. O. Penn. The second case brought was *Marron v. Caterpillar Tractor Co.*, Civil B–76–346, a products liability case asserting claims in negligence, implied warranty, and strict liability. On the eve of trial, plaintiff withdrew the cause of action in negligence in the second case against Caterpillar. The cause of action in negligence in the second case against H. O. Penn was withdrawn during the course of trial.

2. *Town Motor Corporation, a subsidiary of Caterpillar, was also named as a party but, by agreement, both corporations were treated as one for the purposes of this case.*

3. Along with H. O. Penn, plaintiff named its former subsidiary Pennco Industrial, Inc., but

Caterpillar products which leased the fork-lift to Brimco.

Brimco intervened as co-plaintiff in both cases to recover the workmen's compensation benefits paid to Marron as a result of the accident and injuries. H. O. Penn counterclaimed against Brimco for indemnification based on certain provisions of the agreement between Brimco and H. O. Penn for the lease of the forklift. In addition, Caterpillar and H. O. Penn filed cross-claims against each other, but these have been withdrawn.

At trial, the jury rendered a verdict in favor of the plaintiff on his claim against H. O. Penn under Connecticut's leasing statute, found there was no direct negligence on the part of H. O. Penn and decided that the defendants were not liable in the products liability case. Brimco now moves for judgment on H. O. Penn's counterclaim and for sanctions pursuant to Fed.R.Civ.P. 36 and 37; H. O. Penn counters with a motion for a new trial.

## I. THE COUNTERCLAIM

The forklift lease agreement between H. O. Penn and Brimco contains an indemnification clause which reads in pertinent part as follows:

> Lessor assumes no liability for loss or damage on account of accidents.... Lessee agrees to indemnify Lessor against all loss, damage, expense and penalty arising from any action on account of personal injury or damage to property occasioned by the operation, handling or transportation of this equipment during the rental period. Lessee agrees to release and indemnify Lessor from and against all liability, cost and expense caused by or arising from: ... (b) use or maintenance of the equipment by Lessee ....

by agreement of counsel, for the purposes of this case, both corporations were treated as one.

4. Conn.Gen.Stat. § 14-154a provides that:
   Any person renting or leasing to another any motor vehicle owned by him shall be

While Brimco does not dispute that ordinarily this provision would entitle H. O. Penn to indemnification for the money damages awarded to Marron, it argues that subsequent assignments of the lease by H. O. Penn divested H. O. Penn of its status as the lessor under the indemnification clause which, in turn, released Brimco from its liability thereunder.

During the course of the trial it was revealed that, prior to the accident involving Marron, H. O. Penn had assigned the lease for the forklift to its wholly-owned subsidiary, Diesel Sales and Service, Inc. ("Diesel"), and that Diesel thereafter had executed an "assignment of rentals" from the lease to General Electric Credit Corporation ("GE"). The impact of these transactions, as it related to H. O. Penn's claim that it was not a proper party to the lawsuit, was reviewed at length by the Court in the absence of the jury. In an oral ruling, the Court held that the assignment to Diesel was not legally effective to relieve H. O. Penn of its possible vicarious liability in tort as the lessor of the forklift under Conn.Gen. Stat. § 14–154a,[4] or for the purposes of Marron's products liability claims against it.

The Court's decision at trial to "pierce the corporate veil" between H. O. Penn and Diesel was based on the "instrumentality" or "identity" rule adopted in *Zaist v. Olson*, 154 Conn. 563, 575–76, 227 A.2d 552 (1967). See also *Segan Construction Corp. v. Nor-West Builders*, 274 F.Supp. 691, 698–99 (D.Conn.1967); *Saphir v. Neustadt*, 177 Conn. 191, 209–12, 413 A.2d 843 (1970); *Connecticut Co. v. New York, N.H. & H. RR.*, 94 Conn. 13, 107 A. 646 (1919). The primary factors compelling the conclusion that the separate corporate entity fiction should be disregarded were:

(1) Diesel is a wholly-owned subsidiary of H. O. Penn;

(2) Diesel is located in the same place of business as H. O. Penn;

> liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner.

(3) The corporate officers of the two corporations are, for all practical purposes, identical;

(4) Diesel has no employees of its own;

(5) The sole commercial function of Diesel was merely to serve as a tax sheltering device for H. O. Penn;

(6) John A. Siddell, who served as vice-president of both H. O. Penn and Diesel, not only signed the H. O. Penn-Brimco lease and the H. O. Penn-Diesel assignment on behalf of H. O. Penn, but also executed the Diesel-GE assignment papers as the representative of Diesel. In addition, on behalf of H. O. Penn, Mr. Siddell executed the UCC financing statements (Forms UCC–1) recording the "leases" of forklift trucks from H. O. Penn to Brimco, but then, on behalf of Diesel, signed Forms UCC–3 recording the assignments of rentals from these leases from H. O. Penn's "assignee" (Diesel) to GE;

(7) H. O. Penn did not derive any profit from the lease assignment, except to the extent tax benefits were realized, as the transfer was made "at cost;" and

(8) The purpose of Conn.Gen.Stat. §§ 14–15 (licensing of motor vehicle lessors upon proof of financial responsibility) and 14–154a (lessor's liability for damage caused by leased motor vehicle) would be frustrated if a lessor could avoid, by a simple assignment to an affiliate, the responsibility these statutes seek to impose and insure.

For the purposes of post-trial motions filed by the parties, the Court has reviewed its trial ruling on this issue and finds that, under the facts and circumstances of this case, justice and equity require the ruling to be reaffirmed and applied.

Anticipating that the Court would adhere to its prior decision on the question, Brimco requests that the ruling be confined to the issue of H. O. Penn's liability in *tort* for Marron's injuries. On the issue of Brimco's responsibility to H. O. Penn in *contract*, Brimco argues that it would be against public policy to pierce the corporate veil in order to benefit the party which erected it in the first place.

■ While it is true that the theory of recovery in the counterclaim sounds in contract and not tort, it is settled law that the alter ego doctrine and its criteria are applicable to impose substantive liability whether that liability be grounded on causes of action in tort, or contract, or both. See, e. g., *Fisser v. International Bank*, 282 F.2d 231, 234–35 (2 Cir. 1960); *McPheron v. Penn Central Transportation Co.*, 390 F.Supp. 943, 954 (D.Conn.1975); *Zaist v. Olson*, supra, at 575–77; *Connecticut Co. v. New York, N.H. & H. RR.*, supra, at 26–27.

■ Thus the factors enumerated above continue to be relevant and applicable with respect to the counterclaim. No sound reason has been advanced to dismantle the wall of corporate separateness for purposes of imposing tort liability upon H. O. Penn as the lessor of the forklift, only to erect that wall when H. O. Penn seeks to enforce its indemnity rights duly contracted for as the lessor of that vehicle. Moreover, any such hair-splitting distinction between an action in tort and an action in contract would be especially inequitable here because the implied liability for which indemnification is sought *is based on the negligent acts of the indemnitor's employee in which H. O. Penn played no part.*

■ Brimco also asserts that H. O. Penn's right to indemnification was assigned to GE, relieving Brimco from liability to H. O. Penn under the lease. This argument presents different legal considerations than does the H. O. Penn assignment to Diesel. GE loaned funds to H. O. Penn/Diesel for the purchase of equipment which H. O. Penn/Diesel leased to Brimco. To secure these loans, GE took security interests, as defined in Conn.Gen.Stat. § 42a–1–201(37) (1980 Supp.), in the equipment and in the rentals from the leases, in the form of chattel mortgages executed by Diesel. The equipment was thus "goods," as described in Conn.Gen.Stat. § 42a–9–105(1)(h) (1980 Supp.), and the lease rentals were "accounts," as defined in Conn.Gen. Stat. § 42a–9–106 (1980 Supp.), and both served as collateral for the loans. GE was

the "secured party," Conn.Gen.Stat. § 42a–9–105(1)(i); H. O. Penn/Diesel was the "debtor," Conn.Gen.Stat. § 42a–9–105(1)(d); and Brimco was the "account debtor," Conn.Gen.Stat. 42a–9–105(1)(a). As the loans were to be repaid with the proceeds of the leases, the "assignment of rentals" was executed so that GE could collect the rentals directly, rather than have H. O. Penn or Diesel collect them and then remit them to GE. Neither the lease itself nor title to the leased forklift truck was assigned to GE.

■ The issues of whether this arrangement rendered GE vicariously liable for the torts of H. O. Penn/Diesel, or, under Conn.Gen.Stat. § 14–154a, for the torts of the forklift truck operator, and whether the indemnification right became exclusively GE's, are controlled by Conn.Gen.Stat. § 42a–9–317. That section provides, in pertinent part, that "[t]he mere existence of a security interest . . . does not impose contract or tort liability upon the secured party for the debtor's acts or omissions." Thus GE, the secured party, could not be held liable in tort for the negligence, breach of implied warranty, or strict liability of H. O. Penn or Diesel (the debtor); neither could the negligence of the operator, which under the statute would be imputed to H. O. Penn or Diesel, be imputed to GE. Furthermore, as GE could not be held liable if H. O. Penn or Diesel breached the leasing agreement— such contractual liability is H. O. Penn/Diesel's alone—it follows that the contractual right of indemnity can be enforced by H. O. Penn. See *Missouri Pacific RR. v. Rental Storage & Transit Co.*, 524 S.W.2d 898, 901–907 (Mo.Ct.App.1975); *Brandes v. Pettibone Corp.*, 79 Misc.2d 651, 360 N.Y.S.2d 814 (Sup.Ct.1974).

## II. THE MOTION FOR A NEW TRIAL

In light of the Court's ruling with respect to H. O. Penn's counterclaim against Brimco, it appears that H. O. Penn's contentions for a new trial to relieve itself of liability are now rendered moot. In any event, each one of H. O. Penn's claims of error was considered and ruled upon during various stages of the trial, and now, after review, these rulings are confirmed.

## III. THE MOTIONS FOR SANCTIONS

Plaintiff moves, pursuant to Fed.Rules Civ.P. 37(c) and 37(d), for an award of expenses and attorney's fees, alleging that H. O. Penn failed to answer fully and accurately several of his discovery requests submitted to H. O. Penn prior to trial under Fed.Rules Civ.P. 36 and 34.

■ The most glaring deficiency, and the only one that merits serious attention at this time, concerns H. O. Penn's failure until after the trial was underway to disclose that it had assigned the H. O. Penn-Brimco lease to Diesel and that Diesel thereafter had executed an assignment of rentals to GE. These transactions should clearly have been revealed to the plaintiff pursuant to his pretrial requests for "all documents" pertaining to the lease of the forklift between H. O. Penn and Brimco, and for "all financial agreements" covering that same lease. See, e. g., *Paine, Webber, Jackson & Curtis, Inc. v. Inmobiliaria Melia de Puerto Rico, Inc.*, 543 F.2d 3, 6 (2 Cir. 1976), cert. denied, 430 U.S. 907, 97 S.Ct. 1178, 51 L.Ed.2d 583 (1977); *The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions*, 91 Harv.L.Rev. 1033 (1978).

When this question came to the attention of the Court during trial, the Court rejected H. O. Penn's explanations for its failures to disclose and reprimanded counsel. Among other things, the Court stated that the issues arising from the assignments should properly have been broached prior to trial by way of a defense asserted in defendant's answer or a motion for summary judgment. It was further pointed out that the liberal discovery encouraged by the Federal Rules of Civil Procedure was intended to avoid just the sort of "trial by ambush" attempted by defendant here. Cf. *Airtex Corp. v. Shelly Radiant Ceiling Co.*, 536 F.2d 145, 155 (7 Cir. 1976) (noting "the duty of cooperation and disclosure imposed by the discovery provisions of the federal rules"). Finally, in no uncertain terms, the Court commented unfavorably on the tactics of coun-

sel which resulted in a delay of the presentation of the evidence before the jury and an unnecessary use of trial time for a hearing and legal research.

■ However, in the overview, the delay caused by H. O. Penn's inadequate responses to discovery requests was not lengthy and the plaintiff suffered little, if any, inconvenience or expense. The matter was rather quickly resolved before the Court, and the rulings issued favored the plaintiff's cause. In the Court's opinion, the imposition of money sanctions would serve no useful purpose and only further delay the final resolution of this case.

Accordingly, the motion for sanctions is denied.

## CONCLUSION

Judgment shall enter in favor of the plaintiff in Action No. B–75–356 in the amount of $135,206.53. Judgment shall enter in favor of the intervening plaintiff in Action No. B–75–356 in the amount of $22,293.47. Judgment shall enter in favor of the defendant on its counterclaim in Action No. B–75–356 in the amount of $157,500.00. Judgment shall enter in favor of the defendants in Action No. B–76–346.